Our next case is Apple Inc. v. Omni MedSci, Inc. Number 23-1034. Mr. Cushon. Good morning, Your Honor. Good morning. You reserved three minutes for rebuttal. That's correct. Okay. Looks like we're ready when you are. Thank you very much. Police Court, Jeff Cushon for Apple. We filed a 28-J letter in this proceeding after the court's case in Exxonix v. Medtrona came out, and Omni has not filed a response. There were two issues we briefed. We believe the second issue, which addresses that remand question, is largely settled. I will take that up second in my argument today and turn to the claim construction issue, which is the first issue that was briefed. So let's start with basics. These claims all concern a device. It's a wearable device. It works by shining light on the skin, and then there's a sensor which reads the reflected light and turns that into a signal, which is then analyzed. Claims 3, 8, and 16 all concern configuring the device with respect to this feature. And what they all say is it's going to first either detect or identify an object, and second, measure that against a threshold. The device, actually, the way it does that— Two of the claims talk about identify, right, and one of them talks about detect. Is that right? Claims 3 and 8 use the term configure to identify an object. Claim 16 uses the phrase detect an object. What's the purpose of the invention? I mean, realizing how it works, I'm just trying to get to the point of identifying. It's not just to say, to make a reading and say that there's blood here. What the claim term, and there's essentially the same claim term in these two sets of claims. It's describing the behavior of the device, which is doing this evaluation of the signal. And when the court took, when the board took that up below, didn't really look at what that device component was doing. What it did was focused on the dictionary definitions of identify and detect. And I think that's the fundamental problem with their construction. The argument at that time is still the argument that's before us today. Correct. What the board did was reach the conclusion that the terms, the phrases, identify an object, detect an object, as they're used in these claims, covered essentially the same, covered different things. And they did that because of the dictionary definitions. What we've provided in our briefing is evidence showing that the terms identify and detect are used interchangeably throughout the specification, which rebuts that presumption. The board also, though, referred to the actual claim language. I know there were at least some statements about the specification. So you can't just say it was just the dictionaries, even though those were also included in the board decision. I would direct you to the appendix 9 and 10, where the board very clearly does attribute their construction to the dictionary definition of the words detect and identify. And in fact, in Omni's brief in front of this proceeding, they've actually conceded, that's at page 20 and 21 of the red brief, that these three claims, this clause in these three claims can be read to have a common meaning. So they've looked at the passages we've identified in the specification, and they've agreed that one way of reading this clause is to read those two phrases, pages 20 to 21 of the red brief. And what did you say that they cited? So they cited at page 20, 21 of the red brief, they cite a number of the passages that we identified from the specification where we represented that those are showing the interchangeable use of the words device, or I'm sorry, detect and identify. And they conclude that one way of reading those passages is to see these two claim terms essentially having the same meaning. They want it to be their narrower meaning, but they are essentially undoing what the board's decision was, which was because of the dictionary definitions that had to have a different meaning. Am I incorrect that they also relied on the classic presumption? I mean, they didn't start with the dictionary, they started with the presumption, and then they said, which is, you know, and then they looked at the dictionary. I didn't hear you, I haven't heard you say anything about that. I'm happy to talk about that. The fact that the terms are used interchangeably in the specification overcomes that presumption. So the presumption derives from the different dictionary definitions, but you can overcome that presumption by showing that the usage of the terms in the specification is not corresponding to the dictionary. But I don't think you directly answered Judge Albright's question, because if you turn to appendix page 8, I think that's where it starts off talking about the differences in the claim language, which is what I was also referring to. And then later, if you go on to page 9, there's at least references to the patent specification I see in certain paragraphs on page 9. And then, of course, they do turn to the dictionaries later as well. So if you look at appendix, so the first thing they did was they rely on that dictionary definition at page 9, and they conclude from that that the terms, because they have different meanings, have different, that's the basis of their decision. It's not, they're not relying on these additional passages to interpret the meaning of identify or detect. In fact, they're quoting the dictionary definition and adopting it as the meaning. And then in the actual application of this at appendix 51, that's going to this question of whether the prior art we used met that definition. They rely again on that dictionary definition. What we did in our briefing below and here was to point out that these phrases, identify an object and detect an object, don't, that the words don't have the precise boundaries that the board has set in using that dictionary definition. So, for example, one passage at appendix 189 shows the phrase, the specification using the phrase that the device detects a particular blood constituent. Then, in another passage, you see it at 184 and at 188-199, you see the phrase, the device is identifying an object. Those phrases are being used interchangeably to describe the same behavior of the device. This is that function of flashing the light on the skin and measuring the signal and analyzing that signal. So it's not using the words with these precise dictionary definitions. This is a de novo review we have, right? It is. So we don't have to rely on or go straight to those dictionary reviews. Correct. And we think you should focus on what the device does because that's what this claim element is doing. It's describing what the device does. The second thing I'd like to flag is that... Before you get there, if I could just double check. So your position, and we went, my folks went through the spec. Your position is that the way identify and detect are used in the spec sufficiently established for Apple, that they are used interchangeably to support however they were used in the three separate claims. Correct. And the second thing I'd like to direct your attention to, in the specification, the specification doesn't always use the phrase, identify an object to identify a particular thing. We talked about an example that is called the change detection technique. This is at appendix 191 and reflecting to the patent. The patent says the change detection technique may help to identify objects that change in the field of view. Field of view is a sensor. That's the component that's doing the work. The change detection technique involves comparing two signals and seeing if there's a difference between the two signals. What column and line were you looking at? That's at column 17, lines 12 to 13, is the specific quote that I just gave you. So this device is looking for a difference in the two signals. It's the difference that tells it it has identified an object. So it's not identifying a specific thing. It's identifying the presence of an object. If it identifies a high level of blood sugar, then that's identifying a particular thing. It could be even, it doesn't even get to the level of what it is because it's using that difference in the signals to associate with the... You didn't answer my question. Sure. If it detects a high level of blood sugar, then that's identifying a particular thing. Correct. And I think the... Isn't that what this patent is all about? And it's specifically in the area of diabetes? The patent covers a variety of applications. And I think the critical thing to appreciate it is with the claim language, they have not tied it down to identifying particular things or identifying them by a particular technique. The way that the device figures out which thing it is looking at is doing things like pattern matching. They're looking at the signal for kind of like a fingerprint of the molecule, saying, okay, that molecule is glucose or whatever it may be. But at the end of the day, it identifies a particular thing. In the way it's described in the specification, the terms identify and detect are being used interchangeably. And in the context of the claim term, it does not require identifying any particular thing or a particular way of identifying that thing. So we believe what it's doing is detecting the... Or it's confirming that the thing you're looking for is there. That's the... In our construction, we've said when the device identifies or detects an object, it discovers or determines the existence, presence, or fact of the object. It may be a specific object. It may be any object. And that's what the claim language... What if we disagree that the two terms are used interchangeably? I'm sorry, Your Honor. What if we disagree that the two terms are used interchangeably? I think the position of omni coupled with that point of the interchangeability is enough to rebut or overcome the presumption of different meanings that the board used. We think you should look at the role of the component that's being described in this element of the claim and look and see what it's doing. And that's what we think our construction is best describing. Could you address the issue regarding the sufficiency of the reply? Sure. And that's addressed by your recent decision in Exonix. We believe this case is on all fours with Exonix. In Exonix and here, the patent owner did not raise a claim construction in response to our petition before institution. The board observed this. They did not issue a construction of identifying object or detecting object. After institution, they presented a new construction, omni did, which advanced their view about what these two terms mean. We responded to that. We explained why we thought it was wrong. But we also showed why the component, the specific feature of the component that we had used in the prior art, met their construction. Refresh my memory. Is it the case that Apple did not submit a construction? We did. Our construction, we used the construction I mentioned a minute ago, where the construction that best matches what the component of the device is doing. Is that component is discovering or determining the existence, presence, or fact of an object. That's what we presented in response to their construction. But we also addressed why under their construction, where it requires determining what the object is, the prior art met that requirement. And what's notable is that in the section of our brief, in our petition, we had discussed two capabilities of this component. One was determining if it was on the person. The second was addressed in that same section of obviousness of those three claims, where we said it also can do blood oxygen measurements. So suppose we agree with you. What would we do here? Reverse or remount? Well, there's an observation by the board that they seem to recognize when the device performs this blood oxygenation measurement technique, it necessarily identifies the constituents in the blood. But we think as per the exonics phase, at a minimum, it requires a remand to consider our reply argument. So we would vacate remand? Correct. And is the portion that you feel like was not considered on appendix page 5383, is that the portion? That is the portion we, and I would just address kind of generally what the reply did was explain how this blood measurement, blood oxygenation and blood oxygen measurement technique is doing the same thing that the patent is describing doing in order to identify blood constituents. Okay. We'll refer you to your original three minutes. Thank you very much, Your Honor. Mr. Counselor Lurie, did I pronounce that correctly? Yes. Okay. Good morning, Tom Lurie for Omni Med-SAG. I'd like to start with the axionic, axonic, I always put an I in there, case first, if I could. And the problem with Apple's argument is it's founded on a false premise. And the false premise is that Omni first raised a claim construction issue in the patent owner response. And that's not, for the word identify, from the very beginning, Apple relied on the plain and ordinary meaning of that common English word. They never submitted their own construction. They never submitted their own construction, which means that they're just relying on what it means in the ordinary sense. In the ordinary sense, the word means to identify, the word identify means to recognize something as a particular thing. And there's no question about that. And that's the context in which Apple made its petition argument. It said that there's an error, system error apparatus in Lissagursky. And in Lissagursky, when the probe falls off, then there's an error that's generated.  Identifying meaning that it identifies the wrist or the ear. That was their position. Nothing's changed. Our position in response was yes, that's what identify means. They got it wrong in terms of the substance of it. But our argument in terms of claim construction never changed. So this is not like axonics. There was no, in axonics, the petitioner recognized that there were two different claim terms, and axonics argued, implicitly at least, that they had the same meaning, that there was a one input construction. And in response, then the patent owner said, no, no, no, there's a two input. And that was the debate. But was there a dispute between the parties about the plain ordinary meaning of what identify was? Apple raised that in reply. There wasn't until Apple raised it for the first time in reply. Before that, we all agreed that it meant you have to recognize a thing like a wrist or an ear. That was their argument in the petition. You have to recognize a wrist or an ear. And they said Alyssa Gursky does that. It really doesn't. But that was their argument. Did that not become apparent during the patent owner's response? I thought that was when the dispute became apparent and then Apple decided to reply. So what happened was Apple sort of messed up. They said all three claims, 3, 8, and 16, used the phrase to identify an object. In fact, claim 16 says to detect an object. So we said, and that was the only new construction was detect on the word detect. That was the construction we raised for the first time. That's not an issue here. We didn't create a new construction for identify. We said detect means something different than identify. And therefore, you know, we had arguments about detecting. We lost that and we haven't appealed that. But for identify, both in the petition and in the patent owner's response, we all used the same definition. It was in the reply that Apple said, uh-oh, we've got problems. Because identify, we need to have identify mean the same thing as detect. That was where things went wrong for Apple. They wanted identify to mean detect as opposed to identify in the ordinary sense that it means, and it meant in the petition, it meant in our response. So that's why axonics doesn't really apply here. But wasn't Apple addressing how the prior art would meet the definition of identify? How the, in the reply or in the petition? In the reply. In the reply, yes, yes. But that was a brand new, okay, so they did two things in the reply. They said in the reply under Apple's new version of what identify means, which is just the same thing as detect, then, you know, then Lissagorsky meets that definition. That was their first argument. Then they said, but if identify means the common ordinary meaning of identify, which is to recognize something as a particular object, then we've got a whole new set of arguments. And those whole new set of arguments were fundamentally different from the arguments that they raised in their petition. In the petition, Apple relied on, this is what I've highlighted in pink here, is their entire petition argument on, to identify an object. Two sentences. They said, they cited Lissagorsky at column 36. Sir, what page are you on? You're reading from a page. What page are you on? I'm sorry. This is appendix page 275. It's page 62 of Apple's petition. And it's the last paragraph. It's one paragraph. It's literally two sentences long. It's their entire argument on identifying an object from claims 3, 8, and they said 16, even though 16 wasn't that limitation. And they cited column 36 to 37 of Lissagorsky for this error signal. In their reply, which is appendix page 5383, they've now got a slightly longer paragraph, still just one paragraph. And now they're citing column 4 from Lissagorsky. A whole different section of Lissagorsky. It has nothing to do with the argument they raised in the petition. So they've got a brand new argument on reply, citing a whole different section, and not talking about the error signals that they talked about in the petition. I thought that if you look at appendix page 5242, the patent owner response, I don't know, do you have access to the patent? I do. Patent owner response, yes. So looking at appendix page 5242, it talks about Apple does not propose a construction to identify an object, and then it goes on to say the word identify is a common word that means X. Right. And it talks about that. That's right. And that was our position. That they didn't have an express construction, so they were relying on the plain and ordinary meaning. Right, because at that time there was no construction on identify. And it seems to me that this whole argument comes up, the provenance of the argument is rooted in your response. Well, I respectfully disagree, because all words have meaning. They have, under Phillips, words have the plain and ordinary meaning. But you didn't express the meaning that then they responded to on reply. True. Is that not accurate? I put, all we did was put... Wait, let's answer my question. You put forth a meaning in the patent owner response on appendix page 5242, correct? We gave voice to the meaning that was inherent in what Apple argued. Okay, so you put it forth. And then after that, in the reply, that's when they responded to that meaning you put forth, correct? That's right. That's true. That is true. But it isn't any change in construction. The difference between Erickson, for example, Erickson, they started off with a BRI construction. Because Board never had a chance to consider Apple's argument. They absolutely, yeah, I would disagree with that. Yeah, rejecting the reply. They rejected the reply because the reply made a brand new argument that was different from what they argued in the petition. That was the problem. The claim construction... I thought that's what we were discussing, that they were responding to your argument, your construction, on identifying. They were responding to our statement of what the plain and ordinary meaning of identify is, which, again, our position is, and I think it's hard to refute, that was the meaning that they gave the term in the petition. They didn't put voice to it. They didn't say, you know, we use the word identify, we mean X, Y, Z. But it's a common English term. Everybody who speaks English understands identify as identifying something specific. You know, if you go to a police lineup and you identify the perp, you've pointed somebody out. The word identify didn't need any particular definition. The reason it needed a definition here... But once it became clear that it needed definition, then Apple was entitled to go back and address your argument. No, because we didn't change the definition. That's why I say it's different between Axonix and Erickson. In Axonix, there was a definition that was given in the petition that was a one input definition. The response then said, no, no, no, it's not one input, it's two inputs. Why isn't it safer procedurally to give, for us to send it back and have them resolve this, and then I anticipate a different panel will get to face this issue again. Maybe I'll get invited back, maybe I won't, but... But why procedurally doesn't it make more sense to have the PTAB resolve this? Having all... I get your argument. No, no, no, we didn't change anything, but it was the first time an argument was made. And I think Apple disagrees with you that you were making their argument. That's why we're here. So why is it procedurally more prudent for us to have the PTAB decide this, and then if y'all aren't happy, you can come back? Because it gives the petitioners license to sandbag. Because petitioners can do exactly what Apple did here. Was there a surreply? There was a surreply. So there was a chance, so let's say that then obviously this was put forth in the patent owner response, Apple responded, and then there was a surreply, so there was another opportunity to respond, right? There is, but here's the problem. Because Apple relied at least implicitly on the plain and ordinary meaning of the term, and all we did was give voice to it, if you decide that that's enough, that when the patent owner says, here's the meaning... What do you mean you gave voice to it? Is that separate from you argued, you made an argument? No, we just said identify in the plain and ordinary meaning of the term means, and I stated what that meaning is. We weren't saying that Apple used the wrong meaning of identify. We were saying this is the meaning that Apple used, so we could contrast it with detect. The problem was... I haven't appeared in front of the PTAP, but can't you... If it were to go back to PTAP, to your point about sandbagging, can't you, can't the PTAP deal with that equally as we can, which is if they feel like they have all of it, you can make this statement. All I did was give voice to what they had. I don't understand how there's sandbagging here. You can make this argument in PTAP, and they can deal with it. The reason it's sandbagging, and the reason it harms patent owners, is because the patent owner then has a Hobson's choice, right? If other petitioners do what Apple did, and not define their terms, and just start making arguments without any construction, then the patent owner has a Hobson's choice between, A, saying, okay, here's the meaning that the petition's giving this term, and let me argue specifically about that meaning, because otherwise, we're just arguing in the abstract. In which case, then, for the first time, the petitioner can say, oh, well, we've got a whole new meaning of that term, which is what Apple did. I think that makes me, I think it's... Why were you compelled to give it a meaning? Why couldn't you, if they had... I don't understand why you had to give it a meaning in yours, other than to make an argument of what the meaning is. Because we had to contrast it with the term detect. The problem, again, this is... And that's the new theory that was presented for the first time in this proceeding, and it was in your response. The opposite of what Judge Albright is talking about, about the sandbag, the opposite is putting a burden on petitioners. It's just totally unrealistic to anticipate and speculate every theory that may come up, and to address it fully. It's... And at that point, what we end up doing is closing the courthouse doors to litigants. So, respectfully, this isn't a situation where Apple had to anticipate anything we were doing, because they were using the term identify in the same sense we were using it in our response. There was no difference between us and the way we were using the term until Apple's reply, when they tried to change the meaning of identify. I'm sorry. How do we know that they were using the term the same? Because when you look at what they argued in their petition, they say, thus, Lissagursky's... What page are you on? I'm sorry, this is the same site, Appendix 275. This is their entire argument on how Lissagursky meets the claim limitations. Thus, Lissagursky's sensor can identify... Just a second. I'm sorry. Sure. 275? Yes. The last paragraph on the bottom of the page, the last sentence. Okay. Thus, Lissagursky's sensor can identify when an object, and to give the examples of a wrist or an ear, is in range of the sensor. And then they quote the claim language, the wearable device is at least in part configured to identify an object. So Apple is using the term identify to say that it knows that the wrist or an ear, which is the construction, that's the plain ordinary meaning of the term. That's all we did was say that's the plain ordinary meaning of the term that Apple was using in its petition. And then Apple said, oh no, we don't want to have that meaning. We want to have a different meaning. We want it to mean the same thing as detect. That's where things got off. Let me ask you one other question. In terms of the reply that Apple put forth, do you agree that they did not include any new prior art references? No, I don't agree with that. First of all, they included TRAN, which was a brand new reference in terms of this identify limitation. So just to understand, claim, and I see my time's up. TRAN was included in the petition, though, too, right? I'm sorry. The reference is, but not with respect to claims 3, 8, and 16, in the identify and detect language. They used the same references and replies in the petition, but they utilized them in a slightly different way. Is that your argument? Well, yeah. They used different embodiments of those references for these limitations. They didn't use the same embodiments of Lissigerski, and they didn't use TRAN at all for claims 3, 8, and 16. And that was brand new in the reply. So as a matter of law, that should not have been considered. Time's up. Thank you very much. Thank you, sir. Three minutes. Thank you, Your Honor. I think this is not an uncommon situation of a case that comes to you where the parties say that the plain and ordinary meaning of a term is not in dispute, and then once you start the fight, you actually discover there is a dispute. That's exactly this case. I think I also want to flag that we probably disagree about what the claim term is that we're fighting about. He wants to use the word identify. We're referring to the clause of the claim that says, configure the device to identify an object. Sir? Given the importance of the issue that we're talking about, and it just seems to me that the arguments made by the parties bear this out in the briefing. There's an intersection of the legal theories and arguments, and it comes down to this identify. Why would you have anticipated that in your petition? Why wouldn't you have seen this claim has this function here, this particular point that I need to address? I believe we did in the petition. If you look at the first sentence of the section on Appendix 275 that was being discussed, the first sentence of our position was, Lisa Gersey teaches that a sensor can detect when the device has fallen off, and then we use in an interchangeable manner, Lisa Gersey's sensor then can identify when an object has done that. So we're referring to the clause and the behavior of the device as it respects that part of the claim requirement. We believe that was clear how the prior device met that requirement of the claim, and we then present our position. On the next page of this section of reasons why Claims 3 and 16 are obvious, you're seeing us discuss a second capability of the same component of the same device. It's just reflecting, we've given them notice of this ability to do something else that this component can do, and we believe that was perfectly appropriate. Can you respond to opposing counsel's argument that in the reply, you used the same prior art, but maybe you utilized different embodiments of that prior art or for different claims? Can you just respond to that? Yeah, I again would direct you to Appendix 276 because you see us discussing right there that this device that's described in the prior, Lisa Gersey, can detect blood oxygen, and when we came in in the reply, we explained how it does that. It does that by identifying the two different types of hemoglobin that yield the measurement that is the blood oxygenation measurement. The last couple of very brief points, and I know I'm going to be running out of time in a minute, you kind of raised this equities point, and that's actually addressed in the exonics decision that explains the prejudice to petitioners of a new claim structure coming in. And the last point I'd just like to flag was that when we came forward in the reply, we very much clearly addressed what we said originally, and we made it very clear we were responding to this new claim construction, which fits precisely into the rationale of exonics. Okay. Thank you, counsel. This case is taken under advisement.